UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HECTOR FERNANDO MARTINEZ ACOSTA,<br>Petitioner,<br><br>v.<br><br>KEVIN RAYCRAFT et al.,<br>Respondents. | Case No. 26-13010<br>Honorable Shalina D. Kumar<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS**

Petitioner Hector Acosta ("Petitioner"), a federal immigration detainee, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. He seeks either release from federal custody or a new individualized bond hearing on the basis that the process used to deny him bond violated the Due Process clause of the Fifth Amendment. *Id.* The petition is fully briefed, ECF Nos. 5, 6, and the Court finds a hearing unnecessary. *See* E.D. Mich. 7.1(f)(2). For the following reasons, the Court will grant the petition.[1]

[1] Petitioner named Kevin Raycraft ("Raycraft"), director of enforcement and removal operations at the U.S. Immigration and Customs Enforcement ("ICE") Detroit field office, along with Markwayne Mullins ("Mullins"), Secretary of the Department of Homeland Security ("DHS") and Todd Blanche ("Blanche"), U.S. Attorney General, and St. Clair County Jail as

## I. Background

Petitioner is a 35-year-old Honduran citizen who unlawfully entered the United States on or about August 3, 2019 near Hidalgo, Texas. ECF No. 1; ECF No. 5-2, PageID.116. A day or two after his entry he surrendered himself to federal immigration authorities at the border, resulting in his detainment and subsequent release on an Order of Release on Recognizance under Section 236 of the Immigration and Nationality Act ("INA"). ECF No.1, PageID.4 ¶ 25; ECF No. 5-2, PageID.116. Petitioner's release was conditioned on his appearance at all hearings connected to his now pending removal proceedings. ECF No. 5-3, PageID.119.

---

Respondents in his habeas petition. *See* ECF No. 1. Respondents argue that all respondents other than Petitioner's immediate custodian should be dismissed. As this Court and others within the circuit have ruled, the local ICE field office director is not the only proper respondent in habeas actions. *See, e.g., Giminez Gonzales v. Raycraft*, 807 F. Supp. 3d 755, 762–63 (E.D. Mich. 2025); *Quintero-Campos v. Raycraft*, 2026 WL 1862002, at *6 (W.D. Mich. June 29, 2026) (collecting cases). To prevent an evasive transfer of the detainee and to ensure a respondent with authority to enforce the court's grant of habeas relief, district courts decline to dismiss higher-level officials from habeas actions such as this. *See Quintero-Campos*, 2026 WL 1862002, at *6 (declining to dismiss Secretary of DHS); *Giminez Gonzales*, 807 F. Supp. 3d at 762–63 (same for Attorney General); *Velasco Palacios v. Raycraft*, 2026 WL 561041, at *3 (E.D. Mich. Feb. 27, 2026) (same for both Secretary of DHS and Attorney General). Accordingly, the Court declines to dismiss any of the Respondents from this action.

Following his release, Petitioner dutifully appeared at all of his removal hearings. ECF No. 1, PageID.4 ¶ 26. These hearings occurred near Miami, Florida close to where Petitioner resides with his wife and three children. *Id.* at PageID.4 ¶ 27. His two youngest daughters are United States citizens, and his eldest daughter entered the United States with him and is a rider on his asylum application. *Id.*

On December 26, 2025, Petitioner was taken into immigration custody in Florida after the vehicle in which he was a passenger was stopped by police. *Id.* at PageID.4 ¶ 28. For reasons that remain unclear to the Court, he was then separated from his family and relocated to his current place of confinement at the St. Clair County Jail in Port Huron, Michigan. *Id.*

On April 22, 2026, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention in immigration custody at the St. Clair County Jail, "and the denial of access to an individualized bond determination under § 1226(a)." *See Acosta v. US Immigration and Customs Enforcement et al*, Case No. 26-11319. While the prior habeas proceeding was pending, Petitioner received a bond hearing before an Immigration Judge ("IJ"), leading him to voluntarily dismiss that petition without prejudice. Additional developments led

Petitioner to file this successive habeas action on August 24, 2026. ECF No. 1.

In the instant matter, Petitioner "challenges new events and constitutional injuries arising from what occurred at and after that [bond determination] hearing." *Id.* at PageID.5 ¶ 30. At the hearing, the IJ denied Petitioner bond on the grounds that Petitioner had abandoned his asylum application because he missed a deadline to file an updated application. ECF No. 5-5, PageID.128. The order formally denying Petitioner's request for bond tersely states: "Flight risk." ECF No. 1-1, PageID.30.

Petitioner explains that the IJ's conclusion he abandoned his asylum application is significant "because it permitted the" IJ to find he was a flight risk and therefore deny him bond. ECF No. 1, PageID.5 ¶ 32. He also argues that the IJ's decision failed to consider or otherwise distinguish the favorable evidence he submitted with his request for bond, including his family support and ties to his community, compliance with all immigration proceedings, employment history, and lack of significant criminal history. *Id.* at PageID.5 ¶ 33.

To rectify the abandonment issue identified by the IJ, Petitioner promptly submitted a motion to reconsider the abandonment finding accompanied with an updated application for asylum. *Id.* at PageID.5 ¶ 34.

He also subsequently filed a motion for redetermination of bond where he argued, among other things, that because his updated application for asylum cured the abandonment, there had been a material change in circumstances warranting renewed consideration of bond. ECF No. 5-8, PageID.137–38. However, the IJ denied the motion for bond the next day without a hearing, saying that "[f]iling a motion to reconsider does not constitute a material change in circumstances." ECF No. 2-1, PageID.72. Petitioner takes issue with the lack of consideration given to his updated application in the denial. ECF No. 1, PageID.5 ¶ 35.

At a subsequent merits hearing on June 23, 2026, the IJ disclaimed formally deeming Petitioner's asylum application abandoned. ECF No. 5-10, PageID.145–46. He then accepted Petitioner's updated application for asylum but granted Respondents' motion to pretermit it without a full evidentiary hearing. *Id.* at PageID.146–61. Presumably because this eliminated Petitioner's last pending claim for relief before the immigration court, he was ordered deported to Honduras. *Id.* at PageID.164; *see also Johnson v. Guzman Chavez,* 594 U.S. 523, 528 (2021) ("If the immigration judge decides that the alien is inadmissible or deportable and that the alien is not entitled to any of the relief or protection that he requested, the immigration judge will issue an order of removal."). Petitioner timely

appealed this ruling to the Board of Immigration Appeals ("BIA"), and that appeal is currently pending. ECF No. 5, PageID.95–96; ECF No. 6, PageID.179.

Petitioner now "challenges the constitutional adequacy of the process and the legality of his continued detention where the custody determination rested materially upon a premise later disclaimed by the adjudicator, where directly responsive evidence was not meaningfully considered, and where a renewed request for custody review was summarily denied without a hearing." ECF No. 1, PageID.2 ¶ 5.

Respondents argue that the Court should deny Petitioner's petition because it lacks jurisdiction and because the petition is without merit. ECF No. 5.

## II. Analysis

### A. Standard of Review

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus if a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. If a district court entertains a habeas petition, then it must either award the writ or

order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243.

**B. Jurisdiction**

Respondents argue that 8 U.S.C. § 1226(e) prevents the court from exercising jurisdiction over Petitioner's habeas action. ECF No. 5, PageID.104. This argument is specious at best.

Section 1226(e) specifically states:

(e) Judicial review

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). For more than two decades, the Supreme Court has recognized that "Section 1226(e) contains no explicit provision barring habeas review[.]" *Demore v. Kim,* 538 U.S. 510, 517 (2003). Further, because a challenge to "the extent of the Government's detention authority under the statutory framework as a whole . . . is not a matter of 'discretionary judgment,' 'action,' or 'decision[,]' " it "falls outside the scope of § 1226(e)." *Jennings v. Rodriguez*, 583 U.S. 281, 296–97 (2018) (quoting *Demore*, 538 U.S. at 517). Thus, federal courts retain jurisdiction

to review an IJ's discretionary bond denial where it is challenged as legally erroneous or unconstitutional. *See, e.g., Sierra v. INS,* 258 F.3d 1213, 1217–18 (10th Cir. 2001); *Al–Siddiqi v. Achim,* 531 F.3d 490, 494 (7th Cir. 2008); *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017); *Borbot v. Warden Hudson Cnty. Corr. Fac.*, 906 F.3d 274, 279 (3d Cir. 2018); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021); *Miranda v. Garland*, 34 F.4th 338, 353 (4th Cir. 2022); *cf. Boumediene v. Bush*, 553 U.S. 723, 786–87 (2008) (concluding that habeas corpus review may be circumscribed where "the underlying detention proceedings are" sufficiently thorough and contain "an adversarial structure").

District courts have repeatedly found they have jurisdiction to hear habeas petitions under facts analogous to the case at bar. For instance, in *Soto-Medina v. Lynch*, a noncitizen in ICE custody was denied bond following a hearing pursuant to § 1226(a). 817 F. Supp. 3d 612, 617–18 (W.D. Mich. 2026). During the hearing, the petitioner presented evidence that he was not a flight risk or danger to the community, as well as evidence of family connections and a pending asylum application. *Id*. at 618. In response, the government failed to present evidence that the petitioner was a flight risk or danger to the community. *Id*. Nevertheless, the

immigration judge denied the petitioner's bond request because he had "not established that he is not a flight risk." *Id.*

After bond was denied, Soto-Medina filed a § 2241 habeas action arguing that his detention violated the Fifth Amendment Due Process Clause. *Id*. at 621. Specifically, the petitioner asserted that "due process mandates that the government be required to prove, by clear and convincing evidence, that the noncitizen is a flight risk or a danger to the community to justify denial of bond." *Id*. The respondents opposed the petition, arguing, like Respondents here, that § 1226(e) deprives the court of jurisdiction over the habeas action. *Id*. at 618. The *Soto-Medina* court disagreed, finding that the petitioner's challenge was not to a "discretionary judgment" or "decision" that § 1226(e) barred review of, but instead was a constitutional challenge to the statutory framework itself. 817 F. Supp. at 618.

Since the *Soto-Medina* decision, numerous district courts in this Circuit, including this one, have similarly allowed habeas petitions to proceed where the petitioner previously had a bond hearing pursuant to § 1226(a). *See, e.g., Jaimes v. King,* ___F. Supp. 3d___, 2026 WL 2030810, at *1–13 (E.D. Mich. July 14, 2026) (exercising jurisdiction over post-bond hearing habeas petition); *Ba v. Raycraft*, 2026 WL 1213803, at *2 (E.D.

Mich. May 4, 2026) (same); *Gonzalez v. Unknown Party*, 2026 WL 2851721, at *1–2 (W.D. Mich. Sept. 22, 2026) (same); *Diallo v. Raycraft*, 833 F. Supp. 3d 798, 800–01 (S.D. Ohio 2026) (same); *Yokobatake v. Blanche*, 2026 WL 2349432, at *3–5 (N.D. Ohio Aug. 13, 2026) (same); *Castaneda-Castano v. Daley*, 2026 WL 1223095, at *1–3 (E.D. Ky. May 4, 2026) (same); *Singh v. Hott*, 2026 WL 1880217, at *5 (W.D. Ky. June 30, 2026) (same). Respondents moreover fail to cite any recent, on-point precedent holding to the contrary. *See* ECF No. 5, PageID.104–05.

Given the overwhelming weight of authority in favor of it, the Court finds that it has jurisdiction over the petition.

**C. Merits**

Petitioner argues that his "bond proceeding did not provide a meaningful individualized determination because the denial [of bond] rested materially upon the supposed abandonment of [his] asylum application, while the [IJ] later stated that he had never made an abandonment finding." ECF No. 1, PageID.6 ¶ 43. He further argues that the IJ failed to consider or otherwise distinguish the favorable evidence he submitted with his request for bond. *Id.* at PageID.5 ¶ 33. Lastly, Petitioner asserts that the denial without a hearing of his motion for bond redetermination, made after his corrected asylum application was filed, deprived him "of a meaningful

opportunity to be heard on the actual basis of his detention and left him confined under a custody rationale that is materially inconsistent with the [IJ's] later statement." *Id.* at PageID.6 ¶ 45.

The parties agree that Petitioner is being detained under 8 U.S.C. § 1226(a). That provision provides that upon an arrest warrant issued by the Attorney General, a noncitizen located in the interior of the country "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). After a noncitizen is detained, an initial custody determination is made by the Department of Homeland Security ("DHS"). 8 C.F.R. § 236.1(d).

A noncitizen who is denied bond by DHS is thereafter entitled to an individualized bond "redetermination" hearing before an IJ. *Id.*; 8 C.F.R. § 1003.19. If the IJ also denies them bond, the noncitizen may request a subsequent bond redetermination hearing before the IJ, but the request shall be considered "only upon a showing that the alien's circumstances have materially changed since the prior bond determination." 8 C.F.R. § 1003.19(e). At either hearing, "[t]he IJ evaluates whether there is a risk of nonappearance or danger to the community." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 777 (E.D. Mich. 2025), *aff'd*, 175 F.4th 713 (6th Cir. 2026).

IJ's may consider nine factors when assessing a noncitizen's flight risk or danger to the community:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020). BIA precedent further permits an IJ to consider whether the noncitizen's potential eligibility for relief from removal is speculative, insofar as it bears on the risk of flight. *See, e.g., Matter of Dobrotvorskii*, 29 I. & N. Dec. 211, 215 (BIA 2025) (finding the possibility of relief from removal to be "speculative," and citing *Matter of Andrade*, 19 I. & N. Dec. 488, 491 (BIA 1987)).

An immigration judge has "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). And because an IJ's assessment of a noncitizen's flight risk or danger to the community under these factors is supposed to be fact intensive, courts

traditionally give their ultimate determinations a healthy amount of deference. *Id.* (citing and quoting, *inter alia*, *Wilkinson v. Garland*, 601 U.S. 209, 222 (2024)). But this deference ends where constitutional abridgements, particularly of the due process variety, begin.

A hearing satisfies due process when it provides a party with: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her behalf; and (3) an individualized determination of his or her interests. *Kamara v. Att'y Gen. of U.S.*, 420 F.3d 202, 211 (3d Cir. 2005). "A bond hearing is individualized if it is not so arbitrary that it would offend fundamental tenets of due process and if there is a discernible rational basis for the underlying administrative decision, and the immigration judge applies the correct legal standards[.]" *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 555 (D.N.J. 2026) (internal quotations omitted). Elements one and two additionally presuppose an impartial decisionmaker who grounds their decision in the evidence, and who issues "a statement indicating the reasons for the decision and the evidence relied upon." *Id.*

To summarize, a bond hearing comports with due process on a structural level and provides a party with a meaningfully individualized determination when an IJ has " 'given reasoned consideration to the

evidence as a whole, made supportable findings, and adequately explained its reasoning[.]' " *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) (quoting *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007)). A bond hearing likewise comports with due process on a substantive level when an IJ applies the correct legal standard—clear and convincing evidence. *Jaimes,* 2026 WL 2030810, at *6 ("[T]he Due Process Clause requires . . . proving by clear and convincing evidence that Petitioner is a danger to society or a flight risk."); *Velasco Lopez*, 978 F.3d at 856 ("[W]e conclude that a clear and convincing evidence standard of proof provides the appropriate level of procedural protection."); *Martinez*, 124 F.4th at 785 ("Thus, the BIA properly considered the factors set forth in *Guerra*, and it did not abuse its discretion in finding, by clear and convincing evidence, that Martinez was a danger to the community.").

The record before the Court leaves no doubt that the process provided to Petitioner failed to abide by the above constitutional requirements. Structurally, the IJ's evaluation of the evidence before him was deficient. Across both the IJ's written order and the transcript from Petitioner's bond hearing, the only reason the IJ gives for denying bond is that Petitioner "failed to show that he is not a flight risk. He has no relief

before the Court. His 589 is abandoned." ECF No. 5-5, PageID.128; ECF No. 5-9, PageID.141.[2]

This analysis lacks the requisite structural due process protections for at least two reasons. First, it fails to articulate how the evidence demonstrates Petitioner is a flight risk, in terms of the *Guerra* factors or otherwise. *See Garcia v. Hyde*, 817 F. Supp. 3d 112, 120 (D.R.I. 2025) ("In making a bond determination, the IJ must sufficiently explain their reasoning to permit appellate or judicial review of their decision."). Second, and more importantly, the IJ's reasoning appears to wholly disregard the evidence Petitioner submitted on his behalf. *See* ECF No. 5-5, PageID.126–27 (Petitioner's counsel explaining that the evidence submitted on his behalf showed "strong family and community ties, a stable residence," "consistent work history," compliance, a sponsor, and no criminal history). Failing to consider all probative evidence is unmistakable error that deprives a person of a meaningfully individualized bond determination. *See Barnica-Lopez*, 59 F.4th at 530 (" '[A]n IJ may not simply ignore substantial testimonial and documentary proof[.]' ") (quoting

---

[2] Because Petitioner did not challenge it, the Court expresses no opinion on the IJ's placement of the burden of proof on Petitioner. *But see Soto-Medina*, 817 F. Supp. 3d at 622 ("[T]he majority of courts [have] [found] that due process requires that the *government* bear the burden of justifying a noncitizen's § 1226(a) detention.") (emphasis in original).

*Pan*, 489 F.3d at 87); *cf. Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) ("The BIA abuses its discretion when it fails to 'consider and address in its entirety the evidence submitted by a petitioner' and to 'issue a decision that fully explains the reasons for denying a motion to reopen.' ") (quoting *Mohammed v. Gonzales,* 400 F.3d 785, 792–93 (9th Cir. 2005)).

Substantively, the evidence the IJ evaluated and based his conclusions on was insufficient. The IJ concluded Petitioner was a flight risk based upon only one piece of evidence: his abandoned asylum application. ECF No. 5-5, PageID.128.

Standing alone, an abandoned asylum application cannot serve as clear and convincing proof that a noncitizen is a flight risk. True, an IJ may consider the possibility of relief from removal in the flight risk calculus, because it is at least conceivable that someone with a lower chance of receiving relief from removal is at an increased risk of absconding. *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026). But the clear and convincing evidence standard requires more than conceivably increased odds; it instead requires proof that its "factual contentions are highly probable." *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984) (internal quotations omitted); *see also Cooney v. Bob Evans Farms, Inc.,* 645 F. Supp. 2d 620, 629 (E.D. Mich. 2009), *aff'd*, 395 F. App'x 176 (6th

Cir. 2010) ("Evidence is clear and convincing when it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, *direct* and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.") (emphasis added) (cleaned up) (internal quotations omitted).

As applied here, the clear and convincing evidence standard requires proof demonstrating a high probability that Petitioner is a flight risk. However, Petitioner's purportedly abandoned asylum application fails as a matter of law to show this, because while it may conceivably show that Petitioner is more likely to abscond, this single piece of indirect, quasi-probative evidence does not suffice to show there is a high probability of flight. *See, e.g., Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) ("[T]he only evidence the BIA cited for its affirmance of the IJ's conclusion that Singh was a flight risk was the fact . . . that Singh had already been ordered removed by a final, administrative order, diminishing his incentive to appear for further removal proceedings. Although this is a relevant factor in the calculus, it alone does not constitute clear and convincing evidence that Singh presented a flight risk justifying denial of bond."); *Almeida v. Moniz*, 2026 WL 2806735, at *4 (D. Mass. Sept. 18, 2026) (concluding that

a single piece of only semi-probative evidence "fails as a matter of law to support a clear-and-convincing finding of dangerousness."); *Aslan v. Semaia*, 2026 WL 1722902, at *6 (C.D. Cal. June 11, 2026) ("[T]he Immigration Judge considered only that Petitioner did not finish a language program, that he was 'out of status' when he was 'picked up by immigration' and that the IJ 'ha[d] concerns' about the 'candor' of Petitioner's federal tax returns. These facts cannot support a determination by clear and convincing evidence that Petitioner is a flight risk.") (internal citation omitted); *cf. De Leon Trejo v. Bullock*, 2026 WL 2057094, at *2 (6th Cir. May 14, 2026) (concluding petitioner's bond hearing did not appear to be a " 'sham or a pretense[]' " where the IJ's flight risk determination depended on directly probative evidence, such as evidence undermining the credibility of Petitioner's proffered bond sponsor and evidence showing Petitioner's "history of leaving the country and returning multiple times.") (quoting *Palko v. Connecticut,* 302 U.S. 319, 327 (1937), *overruled on other grounds by Benton v. Maryland,* 395 U.S. 784 (1969)).

What is more, the IJ here explicitly disclaimed ever formally deeming Petitioner's asylum application abandoned. ECF No. 5-10, PageID.145 ("I never actually entered an order finding that it was abandoned[.]"). Yet, if that is true, it also means Petitioner has been detained for months based

on no evidence he is a flight risk, because the IJ's flight risk finding depended *entirely* on evidence of abandonment. *See* ECF No. 5-5, PageID.128 ("I'm denying bond finding he failed to show that he is not a flight risk. He has no relief before the Court. His 589 is abandoned."). Procedures that provide for detainment absent any evidence obviously violate due process.

All told, the process afforded to Petitioner regarding his detainment has been so fundamentally compromised and littered with constitutional deficiencies that it can be fairly said to give off the appearance of " 'a sham or a pretense.' " *De Leon Trejo*, 2026 WL 2057094 at *2 (quoting *Palko,* 302 U.S. at 327). While the Court is empowered to order Respondents to provide Petitioner with a constitutionally adequate bond hearing, that may be a fool's gambit. *See Zheng*, 826 F. Supp. 3d at 562 ("Courts across the country confronting due process violations akin to that here have recognized that a new hearing would either be unnecessary, futile, or an inadequate remedy."). So, rather than engage in that likely unfruitful exercise, the Court will order "[t]he typical remedy" for "unlawful executive detention"—"release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

**D. Other Claims and Other Forms of Relief**

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## III. Conclusion

For the reasons discussed above, the Court **ORDERS** the following:

1) Respondents **SHALL** release Petitioner Hector Fernando Martinez Acosta from immigration custody within **48 hours**;
2) Respondents **SHALL** return any confiscated property and documents to Petitioner upon his release;
3) Respondents are **ENJOINED** and **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that Petitioner presents a flight risk or a danger to the community; and
4) Respondents shall file a status report no later than October 26, 2026, confirming that Petitioner has been released from Respondents' custody

**IT IS SO ORDERED**.

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: October 20, 2026